IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

ELLIS J. CAPLE                                                                           PLAINTIFF

v.                                          No. 4:13-cv-336-DPM

ARKANSAS DEPARTMENT
OF HUMAN SERVICES                                                       DEFENDANT

ORDER

Ellis Caple worked at the Arkansas State Hospital in rehabilitation-related jobs for about a decade before retiring. He alleges that, for about a month in 2012, his supervising nurse, Zandalisa Hunter, sexually harassed him and made his work environment hostile. He also says the State Hospital retaliated against him for complaining about Hunter's actions. Caple makes many discrimination claims, most of which fail as a matter of law. Sovereign immunity bars his claims under 42 U.S.C. § 1981, the Age Discrimination in Employment Act, and state law. *Singletary v. Missouri Department of Corrections*, 423 F.3d 886, 890 (8th Cir. 2005); *Kimel v. Florida Board of Regents*, 528 U.S. 62, 91–92 (2000); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121 (1984). Caple's case comes down to Title VII claims for sexual harassment and retaliation. The Court has considered the undisputed facts and, where there is some dispute, construed the record in Caple's favor.

1. **Facts.** From 2005 until retiring in January 2014, Caple worked at the State Hospital, a branch of the Arkansas Department of Human Services, which offers inpatient psychiatric care. In 2010, Caple accepted a full-time job as a rehabilitation instructor. His duties included caring for patients, leading group activities, documenting patient progress, and working with nursing and professional staff. Caple landed in Unit C of the State Hospital in January 2012 and came under the supervision of milieu nurse Zandalisa Hunter. Caple says that for about a month in early 2012, Hunter ogled him up and down while calling him "a big one," commented on the tight fit of his jeans, repeatedly asked him for his personal cell-phone number, and invited him to her office for private meetings. *№ 32 at 42–48*. Caple laughed off Hunter's ogling and suggestive comments, and refused to give her his phone number. *№ 32 at 42–47*. After meeting with Hunter privately in her office twice, Caple insisted on having witnesses at future meetings. *№ 32 at 47–48*.

Overtures rebuffed, Hunter mounted a campaign of persecution against Caple. She began filing frivolous grievances against him, ranted and raved at him for playing chess on his lunch break, shortened his time for replying to investigatory letters, and addressed him as "*Ms.* Caple" in two investigatory

letters. None of these incidents resulted in official discipline. *№ 32 at 56.*

In March 2012, Caple filed an internal grievance alleging harassment. The grievance is silent about the harasser's identity and the nature of the harassment. *№ 24-5 at 2.* Caple testified during his deposition that Hunter was the harasser and that the actions he was grieving were those underlying this lawsuit. The State Hospital deemed Caple's complaint inappropriate for the grievance process and passed his allegations on to management. *№ 34-2.* Nothing came of his report.

In June 2012, the State Hospital suspended Caple for three days without pay for leaving a high-risk patient unattended in violation of DHS policy. Caple contested the suspension but ultimately agreed, after mediating the claim, that a written reprimand was warranted. *№ 34-3 at 1.* Caple's personnel jacket was amended to reflect the agreement, and he received three-days' backpay.

Caple moved from Unit C to Unit E in July 2012. He alleges that the State Hospital transferred him in retaliation for filing the March grievance. Unlike on Unit C, Unit E employees work twelve-hour shifts. Before being assigned to Unit C in January 2012, Caple had voiced his opposition to

working the longer shift.

Who initiated Caple's transfer to Unit E is unclear. On deposition, Caple first said he requested the transfer and later said it was against his will. Brian Hall, Assistant Director of Nursing, stated in his affidavit that Caple requested the transfer. Either way, no one contests that in June 2012 Unit E was the only unit in need of a rehabilitation instructor. № 24-1 at 4–5, ¶ 10.

2. **Title VII claims.** Caple has pleaded sexual-harassment claims premised on a hostile work environment, *quid pro quo* solicitation, and retaliation.

- **Hostile Work Environment**

Hunter's actions constituted sexual advances. But they were not severe and pervasive enough to affect a term, condition, or privilege of Caple's employment. *Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 862 (8th Cir. 2009). Caple testified in his deposition that he would "chuckle, and go on" when Hunter ogled him. № 32 at 42. When Hunter made suggestive comments, Caple "could have ignored them, and did." № 32 at 44. To maintain his claim, Caple must've felt the sexual hostility. *Anderson, supra.* He didn't seem to.

But even if he had, Caple hasn't cleared the high evidentiary hurdle for showing an objectively hostile work environment. *Nitsche v. CEO of Osage Valley Electric Co-operative*, 446 F.3d 841, 846 (8th Cir. 2006). Caple endured Hunter's ogling and suggestive comments for, at most, four weeks. She never touched him, never telephoned him, never asked him out, never overtly propositioned him for sexual favors. Considering the totality of the circumstances, Hunter's conduct was not so extreme, intimidating, offensive, or hostile that it poisoned Caple's work environment. *Ibid*. Many cases in the books involve behavior far more troubling that did not suffice as a matter of law. *See, e.g., Vajdl v. Mesabi Academy of KidsPeace, Inc.*, 484 F.3d 546, 551 (8th Cir. 2007); *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1027–28 (8th Cir. 2004).

- **Quid Pro Quo**

Caple has produced no evidence that Hunter offered him job benefits in exchange for sexual favors or threatened him with job detriments for rebuffing sexual advances. Hunter's conduct and remarks were not the carrot-or-stick ultimatums that Title VII proscribes.

Caple was examined on deposition at length about this claim. He never

mentioned Hunter threatening him. Caple first alleged a *quid* in the declaration that he made in response to the summary judgment motion. There, he stated that Hunter asked him "[d]o you want to keep your job?" № 34-1 at 2. This proposed evidence comes too late. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983). A party can't hold back on direct questioning about all of someone's remarks and then defeat summary judgment with a self-serving, post-deposition affidavit covering the same ground. № 32 at 46 & 82–84.

- **Retaliation**

Caple alleges that the State Hospital retaliated against him for engaging in conduct Title VII protects. Two dates are important here: 7 March 2012, the date Caple filed his internal grievance against Hunter; and 29 September 2012, the date Caple filed his EEOC charge. Caple suffered no harm from either protected action.

Caple believes that he was transferred to Unit E as payback for filing the internal grievance against Hunter. As noted, on deposition Caple first said he requested the transfer and then said he was transferred against his will. The Court assumes the latter because it's most favorable to Caple. Nearly four

months elapsed between Caple filing his grievance and the State Hospital transferring him. That lag dilutes any inference of legal causation. *Kipp v. Missouri Highway and Transportation Commission*, 280 F.3d 893, 897 (8th Cir. 2002). Caple testified in his deposition, moreover, that he was transferred to Unit E because of age discrimination, a claim barred by sovereign immunity, not in retaliation for complaining about Hunter.

Next, Caple claims his EEOC claim prompted both a disciplinary investigation against him for being too loud and the State Hospital adopting a new sick-leave policy. The sick-leave policy applied to all State Hospital employees; and it never caused any loss or harm to Caple. *№ 32 at 106–107*. As to the investigation, Caple testified that nurse Redd, his Unit E supervisor, opened the investigation because Caple wouldn't run her errands. Hunter's alleged sexual harassment, in his assessment, thus played no part. *№ 32 at 107–108*.

Caple also said on deposition, in passing, that his EEOC claim prompted his unwanted transfer to Unit E. Caple was already working on Unit E when he filed the EEOC claim. *№ 32 at 81*. The alleged EEOC-prompt therefore fails as a matter of chronology.

\* \* \*

No reasonable fact finder could return a sustainable verdict for Caple on his Title VII claims based on the governing law and the record taken as strongly as possible in his favor. And the rest of Caple's claims are barred by sovereign immunity. The State Hospital's motion for summary judgment, № 24, is granted.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

6 October 2014